IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| PAUL PARSHALL, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. 4:17cv669-KGB ) |
| v. | ) JURY TRIAL DEMANDED ) |
| BEAR STATE FINANCIAL, INC., BEAR STATE BANK, RICHARD N. MASSEY, DABBS CAVIN, DANIEL C. HORTON, AARON CLARK, FRANK L. CONNER, SCOTT T. FORD, BROCK GEARHART, OMON FITZGERALD HILL, IAN ROBERT VAUGHAN, JOHN J. GHIRARDELLI, MATT MACHEN, WILLIAM J. CHANGOSE, ARVEST BANK, and ARVEST ACQUISITION SUB, INC., | ) CLASS ACTION ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
OCT 13 2017
JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

This case assigned to District Judge Baker
and to Magistrate Judge Volpe

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.  This action stems from a proposed transaction announced on August 22, 2017 (the "Proposed Transaction"), pursuant to which Bear State Financial, Inc. ("Bear State Financial" or the "Company") and Bear State Bank ("Bear State Bank," and together with Bear State Financial, "Bear State") will be acquired by Arvest Bank ("Arvest Bank") and Arvest Acquisition Sub, Inc. ("Merger Sub," and together with Arvest Bank, "Arvest").

2.  On August 22, 2017, the Company's Board of Directors (the "Board" or "Individual

Defendants") caused Bear State to enter into an agreement and plan of reorganization (the "Merger Agreement") with Arvest. Pursuant to the terms of the Merger Agreement, if Bear State Financial's stockholders approve the Proposed Transaction at the stockholder vote scheduled for November 15, 2017, they will receive $10.28 in cash for each share of Bear State Financial common stock they own.

3. If the Proposed Transaction is approved, Merger Sub will merge with and into Bear State Financial, with Bear State Financial surviving the merger as a wholly-owned subsidiary of Arvest Bank. Following the merger, Bear State Financial will either dissolve and liquidate or merge with and into Arvest Bank, and Bear State Bank will become a wholly-owned subsidiary of Arvest Bank and subsequently merge with and into Arvest Bank, with Arvest Bank as the surviving bank.

4. On September 25, 2017, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

5. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. This Court has jurisdiction over defendants because each defendant is either a

2

corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.  Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

9.  Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Bear State common stock.

10. Defendant Bear State Financial is an Arkansas corporation. Bear State Financial's common stock is traded on the NasdaqGM market under the ticker symbol "BSF."

11. Defendant Bear State Bank is an Arkansas banking corporation and a wholly-owned subsidiary of the Company.

12. Defendant Richard N. Massey ("Massey") is Chairman of the Board of the Company.

13. Defendant Dabbs Cavin ("Cavin") is Vice Chairman of the Board of the Company.

14. Defendant Daniel C. Horton ("Horton") is a director of the Company.

15. Defendant Aaron Clark ("Clark") is a director of the Company.

16. Defendant Frank L. Conner ("Conner") is a director of the Company.

17. Defendant Scott T. Ford ("Ford") is a director of the Company.

18. Defendant Brock Gearhart ("Gearhart") is a director of the Company.

19. Defendant Omon Fitzgerald Hill ("Hill") is a director of the Company.

20. Defendant Ian Robert Vaughan ("Vaughan") is a director of the Company.

21. Defendant John J. Ghirardelli ("Ghirardelli") is a director of the Company.

22. Defendant Matt Machen ("Machen") is a director and the President and Chief Executive Officer ("CEO") of the Company.

23. Defendant William J. Changose ("Changose") is a director of the Company.

24. The defendants identified in paragraphs 12 through 23 are collectively referred to herein as the "Individual Defendants."

25. Defendant Arvest Bank is an Arkansas banking corporation and a party to the Merger Agreement.

26. Defendant Merger Sub is an Arkansas corporation, a wholly-owned subsidiary of Arvest Bank, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of the Company (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

28. This action is properly maintainable as a class action.

29. The Class is so numerous that joinder of all members is impracticable. As of August 22, 2017, there were approximately 37,713,171 shares of Company common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

30. Questions of law and fact are common to the Class, including, among others, (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

31. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other

members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

32. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

33. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company*

34. Bear State Financial is an Arkansas corporation and bank holding company. The Company was originally incorporated in Texas in January 1996 under the name First Federal Bancshares of Arkansas, Inc. to serve as the unitary holding company of First Federal Bank ("First Federal"). The Company reincorporated from the State of Texas to the State of Arkansas on July 20, 2011. On June 3, 2014, the Company changed its name from First Federal Bancshares of Arkansas, Inc. to Bear State Financial, Inc.

35. On June 13, 2014, the Company completed its acquisition of First National Security Company, the parent company for First National Bank headquartered in Hot Springs, Arkansas ("First National") and Heritage Bank, N.A. headquartered in Jonesboro, Arkansas ("Heritage Bank"). On February 13, 2015 First Federal, First National, and Heritage Bank were consolidated

5

into a single charter forming Bear State Bank, N.A. On October 1, 2015, the Company completed its acquisition of Metropolitan National Bank headquartered in Springfield, Missouri.

36. The primary asset of the Company is the capital stock of Bear State Bank. The business and management of the Company consists of the business and management of Bear State Bank. At June 30, 2017, Bear State had consolidated assets of $2.24 billion, total loans of $1.66 billion, deposits of $1.70 billion and stockholders' equity of $244.5 million.

37. Bear State Bank is a state chartered bank that conducts business through 48 banking locations and three loan production offices that are located in various communities in Arkansas, Missouri, and Oklahoma. Bear State Bank is a community-oriented financial institution that offers a broad line of financial products to individuals and business customers. Retail and business deposit accounts include noninterest bearing and interest bearing checking accounts, savings and money market accounts, certificates of deposit, and individual retirement accounts. Loan products offered by Bear State Bank include residential real estate, consumer, construction, lines of credit, commercial real estate, and commercial business loans.

### *The Proxy Statement Omits Material Information*

38. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction.

39. The Proxy Statement omits material information regarding the Company's financial projections and the valuation analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Raymond James & Associates, Inc. ("Raymond James").

40. The disclosure of projected financial information is material because it provides

stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

41. Although the Proxy Statement discloses certain of the Company's financial projections, it fails to disclose the projections that Raymond James actually used in its valuation analyses to support its opinion that the merger consideration is fair to the Company's stockholders. According to the Proxy Statement, in performing its Discounted Cash Flow Analysis: "Raymond James analyzed the discounted present value of Bear State's projected free cash flows for the years ending December 31, 2017 through December 31, 2022 on a stand-alone basis, as provided by Bear State's management. Raymond James used tangible common equity in excess of a target ratio of 8.0% at the end of each projection period for free cash flow." The Proxy Statement, however, only discloses the Company's projected tangible common equity, but it does not disclose the actual projections (*i.e.*, tangible common equity in excess of a target ratio of 8.0%) that Raymond James relied upon in its analysis.

42. Further, to determine the Company's terminal value in its Discounted Cash Flow Analysis, Raymond James applied certain multiples to the Company's 2022 *adjusted* net income. The Proxy Statement, however, only discloses the Company's projected net income, rather than the Company's projected adjusted net income and the line items used to calculate the Company's adjusted net income for years 2017 through 2022. The disclosure of this information is also necessary to avoid misleading stockholders with non-GAAP (generally accepted accounting

principles) financial measures and to allow them to observe what adjustments were made to the Company's projections of net income.

43. Additionally, while the Proxy Statement discloses projected tangible common equity, it fails to disclose the adjustments made to this non-GAAP financial measure, disclose the line items used to calculate tangible common equity as well as how it was calculated, and provide a reconciliation to the most comparable GAAP measure.

44. With respect to Raymond James's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the actual "free cash flows" for years 2017 through 2022 used by Raymond James in its analysis; (ii) the reason Raymond James used a target ratio of 8.0% to determine the Company's "free cash flows;" (iii) the Company's 2022 adjusted net income; (iv) the inputs and assumptions underlying the discount rate range selected by Raymond James in its analysis; (v) the perpetuity growth rate range implied by Raymond James's analysis; and (vi) the terminal values for Bear State. Additionally, the Proxy Statement states that, "[i]n connection with its analyses, Raymond James considered and discussed with Bear State's management how the discounted cash flow analyses would be affected by changes in the underlying assumptions." The Proxy Statement must disclose the changes in the underlying assumptions that Raymond James considered and discussed with Bear State's management, as well as the results of those alternate analyses.

45. With respect to Raymond James's Selected Companies Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies observed by Raymond James in its analysis.

46. With respect to Raymond James's Selected Transaction Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the

8

transactions observed by Raymond James in its analysis. The disclosure of this information is particularly necessary in light of the fact that this analysis was specifically discussed among the Board members just prior to their approval of the Proposed Transaction, and the Board attempted to downplay the results of the analysis by attacking the comparability and reliability of the transaction in the analysis. Specifically, the Proxy Statement states:

> In discussing the fairness opinion the Bear State board and Raymond James discussed the fact that the merger consideration of $10.28 per share was below the 25th percentile of the implied transaction metrics for the trailing twelve months EPS and next twelve months forecasted EPS of both the regional and national selected transactions. The Bear State board and Raymond James noted that many of the target companies included in the regional and national selected transactions list had considerable presences in large metropolitan markets that have experienced and are anticipated to continue to experience greater economic growth than that experienced in the markets in which Bear State operates, and that the earnings-based valuations for these other transactions reflect the greater historical and anticipated growth in those markets.

47. Thus, in light of defendants' attempt to minimize the results of Raymond James's Selected Transaction Analysis, defendants must at least provide stockholders with the full disclosure of the inputs and assumptions underlying the analysis.

48. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Opinion of Raymond James & Associates, Inc.;" and (ii) "Certain Unaudited Bear State Forecasts."

49. The Proxy Statement omits material information regarding potential conflicts of interest of the Company's officers.

50. The Proxy Statement states that: "Following the consummation of the merger, it is expected that the members of Bear State's senior management team may continue as employees of Arvest or its affiliates. . . . Prior to and following the closing of the merger, however, certain of our executive officers have had, and may continue to have, discussions, or may enter into

9

agreements, with Arvest regarding future employment opportunities." The Proxy Statement, however, fails to disclose the timing and substance of those conversation regarding post-merger employment, as well as who participated in such conversations.

51. Further, the Proxy Statement states that, in connection with the Proposed Transaction, the Board authorized a retention cash incentive award of $86,000 to Bear Bank's Executive Vice President and Chief Accounting Officer, Jeri Pritchett, that will become payable upon the closing of the Proposed Transaction. The Proxy Statement, however, similarly fails to any information relating to the timing and nature of discussions regarding this retention payment, including who proposed the retention payment and who participated in such conversations.

52. Communications regarding post-transaction employment and retention payments during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

53. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger;" and (ii) "Interests of Certain Persons in the Merger."

54. The Proxy Statement omits material information relating to potential conflicts of interest of the Company's financial advisors. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

55. Specifically, the Proxy Statement states that, "[i]n the two years preceding the date of Raymond James's opinion, Raymond James has not been engaged by or otherwise performed

services for Arvest for which compensation received was deemed material." The Proxy Statement must disclose the nature and timing of the services that Raymond James provided to Arvest in the past, as well as the amount of compensation that Raymond James earned. This information is necessary to allow the Company's stockholders to assess for themselves whether the amount of compensation was material or whether Raymond James suffered from a potential conflict of interest.

56. Further, the Proxy Statement indicates that the Board engaged an outside consulting firm, DD&F Consulting Group, Inc. ("DD&F"), "to assist in the performance of a market check and to provide other consulting services in connection with a potential transaction." The Proxy Statement, however, fails to disclose the terms of the engagement letter with DD&F, including the amount of compensation DD&F earned in connection with its services to the Company. Further, the Proxy Statement must disclose whether DD&F has provided any services to Bear Bank, Arvest, or their affiliates in the past, and if so, the amount of compensation earned by DD&F for those services.

57. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger;" and (ii) "Opinion of Raymond James & Associates, Inc."

58. The Proxy Statement omits material information regarding the background of the Proposed Transaction. The Company's stockholders are entitled to an accurate description of the process the directors used in coming to their decision to support the Proposed Transaction.

59. The Proxy Statement indicates that the Company and DD&F reached out to six financial institutions that were determined the most likely to have the interest in acquiring the Company and the ability to consummate a transaction with Bear State, and that one party,

11

Company A, submitted a merger proposal. The Proxy Statement, however, fails to disclose whether the Company entered into any confidentiality agreements with any of those parties, and if so, the Proxy Statement must disclose the terms of those confidentiality agreements, including whether they contain a standstill and/or "don't ask, don't waive" provision that are or were preventing those counterparties from submitting superior offers to acquire the Company.

60. The omission of this material information renders the "Background of the Merger" section of the Proxy Statement false and misleading.

61. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Bear State

62. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

63. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Bear State is liable as the issuer of these statements.

64. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within Bear State, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

65. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

66. The omissions and false and misleading statements in the Proxy Statement are

material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

67. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

68. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

69. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Arvest

70. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

71. The Individual Defendants and Arvest acted as controlling persons of Bear State within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Bear State and participation in and/or awareness of Bear State's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Bear State, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

72. Each of the Individual Defendants and Arvest was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or

13

cause them to be corrected.

73. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Bear State, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement.

74. Arvest also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

75. By virtue of the foregoing, the Individual Defendants and Arvest violated Section 20(a) of the 1934 Act.

76. As set forth above, the Individual Defendants and Arvest had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and

setting it aside or awarding rescissory damages;

      C.      Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

      D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

      E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

      F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: October 13, 2017

                              **EMERSON SCOTT, LLP**

By: _____
David G. Scott, AR Bar No. 2006030
1301 Scott Street
Little Rock, AR 72202
Telephone: (501) 907-2555
Facsimile: (501) 907-2556
Email: dscott@emersonfirm.com

**EMERSON SCOTT, LLP**
John G. Emerson, AR Bar No. 2008012
830 Apollo Lane
Houston, TX 77058
Telephone: (281) 488-8854
Facsimile: (281) 488-8867
Email: jemerson@emersonfirm.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800

## CERTIFICATION OF PLAINTIFF

I, Paul Parshall ("Plaintiff"), hereby declare as to the claims asserted under the federal securities laws that:

1. Plaintiff has reviewed the complaint and authorizes its filing.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, and I will testify at deposition or trial, if necessary. I understand that this is not a claim form and that I do not need to execute this Certification to share in any recovery as a member of the class.

4. Plaintiff's purchase and sale transactions in the Bear State Financial, Inc. (NasdaqGM: BSF) security that is the subject of this action during the class period is/are as follows:

### PURCHASES

| Buy Date | Shares | Price per Share |
|---|---|---|
| 3/17/17 | 80 | $9.24 |
| | | |
| | | |
| | | |

### SALES

| Sell Date | Shares | Price per Share |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

*Please list additional transactions on separate sheet of paper, if necessary.*

5. Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.  During the three years prior to the date of this Certification, Plaintiff has not moved to serve as a representative party for a class in an action filed under the federal securities laws.

7.  Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___ day of _____, 2017.

_____
PAUL PARSHALL

2